UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ANATOLIY ANDREYUK and JENNY
FELIPPELLI, as Executor of the Estate
of JOSE FELIPPELLI,

                              Plaintiffs,                         **DECISION AND ORDER**

          -against-                                              19-cv-7476 (AEK)

ASF CONSTRUCTION & EXCAVATION
CORP. and ANDRE FERNANDEZ,

                              Defendants.
------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

     Plaintiff Anatoliy Andreyuk commenced this action on August 9, 2019, ECF No. 1, and

in March 2020 filed the Amended Complaint, which joined as a plaintiff Jose Felippelli, ECF

No. 26.  Mr. Felippelli died on February 28, 2021, *see* ECF No. 64, and by order dated July 12,

2021, Mr. Felippelli's daughter Jenny Felippelli, in her capacity as executor of her father's

estate, was substituted for Mr. Felippelli as a plaintiff in this action, ECF No. 66.  The Amended

Complaint asserts claims against Defendants ASF Construction and Excavation Corp. and Andre

Fernandez for violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law

("NYLL") based on the alleged failure to pay overtime wages, failure to pay minimum wage,

failure to pay wages weekly, and failure to provide wage notices and wage statements.  ECF No.

26.  Before the Court is the parties' application for approval of a settlement agreement in

accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).  ECF No.

129 ("*Cheeks* Application"); *see also* ECF No. 129-1 ("Proposed Settlement Agreement").  For

the reasons that follow, the Court finds the proposed settlement to be fair and reasonable; the

only term of the Proposed Settlement Agreement that cannot yet be approved is the provision in

Paragraph 2.c regarding litigation expenses.  Plaintiffs' counsel must submit additional materials before the Court can grant final approval of the settlement.

## DISCUSSION

In the Second Circuit, "parties cannot privately settle FLSA claims with a stipulated dismissal with prejudice under Federal Rule of Civil Procedure 41 absent the approval of the district court or the [United States] Department of Labor."  *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599 (2d Cir. 2020).  Thus, a district court in this Circuit must review a proposed FLSA settlement and determine whether it is fair and reasonable.  *See, e.g.*, *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, No. 20-cv-7131 (KMK), 2021 WL 38264, at *2 (S.D.N.Y. Jan. 5, 2021).  When reviewing a proposed settlement agreement in an FLSA case, district courts consider the "totality of circumstances," *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), to assess whether the agreement is fair and reasonable, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Fisher*, 948 F.3d at 600 (quoting *Wolinsky*, 900 F. Supp. 2d at 335-36).  In addition, the following factors "weigh against approving a settlement":

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted).  "[T]here is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."  *Xiao v. Grand Sichuan Int'l St. Marks, Inc.*, Nos. 14-cv-9063, 15-cv-6361 (RA), 2016 WL 4074444, at *2 (S.D.N.Y. July 29, 2016) (quotation marks omitted).

Having reviewed the parties' submissions in support of the proposed settlement, and having considered the totality of the circumstances, the Court finds that the Proposed Settlement Agreement is fair and reasonable.

All five *Wolinsky* factors weigh in favor of approval.  First, the Proposed Settlement Agreement provides for a total settlement payment of $72,500,[1] with $10,000 payable to Plaintiff Felippelli, $38,333.33 payable to Plaintiff Andreyuk, and $24,166.67[2] payable to Plaintiffs' counsel as attorneys' fees and costs.  *Cheeks* Application at 1.  According to Plaintiffs, Mr. Andreyuk's best possible recovery at trial would be $246,822.36 for total unpaid wages, while

---

[1] The first page of the *Cheeks* Application incorrectly states that "Plaintiff [*sic*] will receive a total gross sum of Thirty Thousand Dollars."  *Cheeks* Application at 1.  This is clearly a scrivener's error—throughout the remainder of the *Cheeks* Application and the Proposed Settlement Agreement, the settlement amount is consistently described as $72,500.00.  *See id.*; Proposed Settlement Agreement § 2.

[2] The Proposed Settlement Agreement states that counsel "shall receive from Defendants a total of Twenty Four Thousand Dollars and Sixty-Seven Cents ($24,166.67), consisting of Twenty-Two Thousand One Hundred Twenty Seven Dollars and Two Cents ($22,039.02) for attorneys' fees . . . ."  Proposed Settlement Agreement § 2.c.  The typographical errors in this section are obvious.  Counsel has included the correct numbers for each component of payment—which correspond to the figures set forth in the *Cheeks* Application—but the words used to describe those numbers do not correspond to the numbers themselves.  To be clear, for this analysis, the Court will rely on the numbers set forth in this section of the Proposed Settlement Agreement (and in the *Cheeks* Application), and will disregard the incorrect words associated with those numbers.

Ms. Felippelli's best possible recovery at trial would be $51,300.00 for total unpaid wages.[3]  *See*
ECF Nos. 129-2 at 4, 129-3 at 3.  Additionally, Plaintiffs sought liquidated damages for the
unpaid wages under the FLSA and NYLL, which, if awarded, could have doubled their
recoveries for unpaid wages.  Further, both Plaintiffs sought statutory damages of up to $10,000
each under New York law for failure to provide wage notices and statements.  In total, Plaintiffs
assert that Mr. Andreyuk's best possible recovery at trial would be $503,644.72, while Ms.
Felippelli's best possible recovery at trial would be $112,600.00.[4]  The amount payable to
Plaintiffs in the Proposed Settlement Agreement constitutes approximately 16 percent of Mr.
Andreyuk's and approximately 19 percent of Ms. Felippelli's total alleged unpaid wage
damages, and approximately 8 percent of Mr. Andreyuk's and approximately 9 percent of Ms.
Felippelli's maximum possible recovery for their FLSA and NYLL claims.

Undoubtedly, these settlement figures are lower, as a percentage of Plaintiffs' alleged
damages, than the amounts typically approved by courts in the Second Circuit when evaluating
potential agreements resolving FLSA and NYLL claims.  But since the parties only reached their
agreement to settle this case on the eve of trial, after having thoroughly litigated cross-motions
for summary judgment and motions *in limine*, the Court is particularly well-versed in the

---

[3] In the damages calculation submitted in connection with the *Cheeks* Application,
counsel has calculated Mr. Felippelli's damages through only August 2018, even though the
Court ruled that at trial, Plaintiffs would be permitted to seek damages for Mr. Felippelli's
unpaid wages through mid-2019.  *See* ECF No. 81 at 23-27.  Based on the Court's familiarity
with this case and colloquy with counsel during pre-trial conferences, however, the Court
understands this decision to cut off the damages calculation in August 2018 to be a strategic pre-
trial determination made as a result of conflicting evidence as to Mr. Felippelli's claims, and the
Court therefore will use the figures submitted by Plaintiffs' counsel as the basis for its analysis
here.

[4] The total best-case judgment for Mr. Andreyuk is $246,822.36 (actual damages) plus
$246,822.36 (liquidated damages) plus $10,000.00 (statutory damages).  The total best-case
judgment for Ms. Felippelli is $51,300.00 (actual damages) plus $51,300.00 (liquidated
damages) plus $10,000.00 (statutory damages).

strengths and weaknesses of the claims and defenses, including the significant challenges that Plaintiffs would have faced in pursuing this case to verdict.  First, because Mr. Felippelli passed away during the pendency of this litigation prior to testifying at a deposition, Plaintiffs would not be able to offer Mr. Felippelli's testimony as to the hours that he worked and for which he allegedly was not properly compensated.  Plaintiffs intended to rely on Mr. Andreyuk to provide evidence as to Mr. Felippelli's hours, but for the reasons set forth in the Court's decision on the parties' motions for summary judgment, that evidence was problematic.  *See* ECF No. 81 at 23-24; *see also Cheeks* Application at 2.  Second, Defendants have maintained that they compensated Mr. Felippelli in cash for all overtime worked, and intended to introduce testimony to support that contention.  Plaintiffs appropriately acknowledge that this would be nearly impossible to refute without Mr. Felippelli's testimony and in light of Mr. Felippelli's prior admissions that he did receive some portion of his wages in cash.  *Cheeks* Application at 2. Third, as to Mr. Andreyuk's claims, Defendants asserted numerous defenses, including the affirmative defense that Mr. Andreyuk was exempt from the overtime and minimum wage requirements of the FLSA and NYLL.  *See* ECF No. 88 at 4; *see also* ECF No. 81 at 9-21 (denying summary judgment due to issues of fact concerning whether Mr. Andreyuk was a "*bona fide* executive" and therefore exempt from state and federal laws concerning minimum wage and overtime wages).  While there were material factual issues that precluded an award of summary judgment for Defendants based on this argument, it is certainly possible that Mr. Andreyuk could recover nothing at all if he were to proceed to trial.  For all of these reasons, among others, the Court views Plaintiffs' maximum potential damages figures as set forth in the *Cheeks* Application as extremely optimistic, and not representative of the likely recovery Plaintiffs would obtain even if they overcome these various litigation risks to some degree.

Accordingly, based on the particular facts and circumstances presented here, the settlement

figures for each Plaintiff are reasonable.  *See Zorn-Hill v. A2B Taxi LLC*, Nos. 19-cv-1058, 18-

cv-11165 (KMK), 2020 WL 5578357, at \*4-5 (S.D.N.Y. Sept. 17, 2020) (approving settlement

amount equal to 12.5 percent of the plaintiffs' best-case scenario recovery in case involving

"major factual and legal litigation risks"); *Aguilar v. N & A Prods. Inc.*, No. 19-cv-1703 (RA),

2019 WL 5449061, at \*1-2 (S.D.N.Y. Oct. 24, 2019) (approving settlement of $40,000 where the

plaintiffs' estimated potential recovery was $570,000, based on, *inter alia*, a dispute about the

plaintiff's exempt status and number of hours worked); *Gervacio v. ARJ Laundry Servs. Inc.*, No.

17-cv-9632 (AJN), 2019 WL 330631, at \*1 (S.D.N.Y. Jan. 25, 2019) (approving settlement that

would net the plaintiff approximately 13 percent of the maximum possible recovery amount (*i.e.*,

$4,000 to the plaintiff out of a possible $29,820.41) where facts were disputed).

Second, the settlement will enable the parties to avoid significant additional expenses and

burdens associated with establishing their claims and defenses.  Settling the case now, prior to

trial, will allow the parties to avoid the costs, in both time and money, of proceeding through

presenting this case to a jury and any potential post-trial motion practice or appeal.

Third, as discussed above, Plaintiffs would have faced significant litigation risks if this

case had proceeded to trial.  At the same time, Defendants faced real risk that Plaintiffs could

have been at least partially successful on their claims.  Defendants did not maintain appropriate

payroll records for certain periods of Mr. Felippelli's employment, and there would be a genuine

risk of a jury award for at least some amount of Mr. Felippelli's claimed overtime wages.  As to

Mr. Andreyuk, if the evidence at trial was not adequate to establish any of Defendants'

affirmative defenses, Mr. Andreyuk had the potential for meaningful recovery.  Moreover, even

if Plaintiffs were awarded far less than their projected maximum potential damages, Defendants

also would have been responsible for paying Plaintiffs' counsel's legal fees, which would have added a substantial sum to any potential judgment against them.  In short, because of the significant anticipated risks and costs involved in pursuing this matter through trial, settlement is an effective means of resolving the litigation for all parties.

With respect to the fourth and fifth *Wolinsky* factors, the Court has no reason to believe that the proposed settlement is anything other than the product of arm's-length bargaining between experienced counsel and no reason to believe that the proposed settlement is the product of fraud or collusion.

Moreover, none of the factors set forth in *Wolinsky* that weigh against approving a settlement exist in this case.  This is a case involving two individual plaintiffs—the Court is not aware of other employees who are similarly situated to Plaintiffs, and no other employees will be affected by the settlement and dismissal of the lawsuit.  Given that the employment relationship between Plaintiffs and Defendants has ended, there is no likelihood that the circumstances that gave rise to this lawsuit will recur.  While the Court is aware of one prior FLSA lawsuit filed against these Defendants, that action—which also was settled—covered much of the same time period at issue in this matter and, as became clear during the litigation over the motions *in limine*, actually resulted in significant changes in workplace recordkeeping practices by the Defendants.  *See* ECF No. 91 at 4 (asserting that "during the pendency of Felippeli's [*sic*] employment, the Defendants were served with an FLSA collective overtime lawsuit, and in that same week, the practice stopped"); *Sacarasi v. Fernandes*, No. 19-cv-268 (CS) (S.D.N.Y.). Further, the complaint in this matter does not appear to raise novel factual or legal issues that would further the development of law in this area.

In addition, the Proposed Settlement Agreement does not contain any problematic provisions that would preclude court approval.  There are no confidentiality or non-disparagement provisions in the proposed agreement, *see Cortes v. New Creators, Inc.*, No. 15-cv-5680 (PAE), 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016), and the release provision in the Proposed Settlement Agreement is appropriately limited to the wage and hour claims asserted in this action and related claims that could have been asserted, *see, e.g.*, *Illescas v. Four Green Fields LLC*, No. 20-cv-9426 (RA), 2021 WL 1254252, at *1 (S.D.N.Y. Apr. 5, 2021).

The Proposed Settlement Agreement contemplates that this Court "will retain jurisdiction over any question or dispute arising out of or pursuant to this Settlement Agreement," but that "[i]f the Court declines to retain jurisdiction, the Settling Parties consent the Federal District Court where the Action was originally filed and the Supreme Court of the of the State of New York, County of Westchester, with respect to any question or dispute arising out of or pursuant to this Settlement Agreement."  Proposed Settlement Agreement § 7.  Pursuant to the parties' request, the Court hereby agrees to maintain jurisdiction over this matter until all payments have been completed.  *See Lei v. Haryin Inc.*, --- F. Supp. 3d ---, 2022 WL 17404194, at *3 (S.D.N.Y. Dec. 2, 2022) ("To enforce the parties' settlement agreement, the Court had to have either expressly retained jurisdiction in its order of dismissal, or incorporated the terms of the agreement in its order.").

With respect to attorneys' fees and costs, the proposed settlement provides for Plaintiffs' counsel to receive $22,039.02 in fees and $2,127.65 in costs, for a total of $24,166.67.  *See* Proposed Settlement Agreement § 2.c; *Cheeks* Application at 1.  "Courts in this District routinely award one third of a settlement fund as a reasonable fee in FLSA cases."  *Santos v. YMY Mgmt.*

*Corp.*, No. 20-cv-1992 (JPC), 2021 WL 431451, at *2 (S.D.N.Y. Feb. 8, 2021) (cleaned up).[5]

"However, even when the proposed fees do not exceed one third of the total settlement amount,

courts in this [C]ircuit use the lodestar method as a cross check to ensure the reasonableness of

attorneys' fees." *Id.* (quotation marks omitted).  Appropriately, Plaintiffs' counsel has submitted

contemporaneous time records and hourly rate information to substantiate the fee application.

*See* ECF Nos. 129-4, 129-5; *Fisher*, 948 F.3d at 600 ("The fee applicant must submit adequate

documentation supporting the requested attorneys' fees and costs.").

Applying the lodestar method, Plaintiffs' representatives claim to have spent a total of

119.86 hours on this case, for a total lodestar fee of $45,449.00.[6]  *See* ECF Nos. 129-4, 129-5.

Jordan El-Hag, an attorney with "extensive" experience practicing labor and employment law,

spent 67.9 hours on this case at an hourly rate of $350 during the years 2019-2021, and 33.96

hours at an hourly rate of $400 during the years 2022-2023; Raymond Nardo, an attorney with

---

[5] One third of the $72,500 settlement amount is $24,166.67.  "[W]hen awarding fees attorneys' fees on a percentage-of-the-fund basis, the appropriate denominator is the total settlement *net* of costs." *Beckert v. Ronirubinov*, No. 15-cv-1951 (PAE), 2015 WL 8773460, at *3 (S.D.N.Y. Dec. 14, 2015) (emphasis in original).  In this case, one-third of the total settlement fund net of costs is $23,457.45 ($72,500 - $2,127.65 = $70,372.35; $70,372.35 ÷ 3 = $23,457.45).  Counsel is therefore requesting slightly less than one-third of the settlement amount (adjusted for expenses) in fees.

[6] In the *Cheeks* Application, Plaintiff's counsel states that "[t]he lodestar is $39,236.50 computed at an hourly rate of $400 per hour for a total of 113.11 hours." *Cheeks* Application at 3; *see also* ECF No. 129-4 at 1.  There are multiple issues with this statement.  First, $400 multiplied by 113.11 hours amounts to $45,244.00, not $39,236.50.  Second, the billing records reflect billing rates ranging from $350 per hour to $450 per hour, and for the majority of time Plaintiffs' counsel spent working on this matter, his billing rate was $350 per hour.  *See* ECF No. 129-4 at 3-15.  Finally, the 113.11 hours figure includes, among other items, hours for expenses, *see* ECF No. 129-4 at 1 (claiming one hour for "Printing and copy fees for trial prep exhibit binders, dividers, and copies"), 5 (claiming one hour for "Parking asf deposition" and one hour for "Parking Anatoliy deposition"), 10 (claiming one hour for "Parking for Anatoliy deposition"), and paralegal time, *see id.* at 8, 9.  Because of all of these issues, the Court has not relied on the figures provided in the *Cheeks* Application and instead has conducted its own calculations based on the billing records provided.

over two decades of experience, spent 18 hours on this matter at an hourly rate of $450.[7, 8]  The

proposed fee ($22,039.02) represents approximately 49 percent of the lodestar amount

($45,449.00), which is fair and reasonable given the facts and circumstances of this case.  *See*

*Fuentes v. Highgate Cleaners Inc.*, No. 20-cv-3925 (OTW), 2022 WL 14717835, at *2

(S.D.N.Y. Oct. 25, 2022) (finding attorneys' fees award to be reasonable where "fees award is

less than [p]laintiff's counsel's stated lodestar"); *Gervacio*, 2019 WL 330631, at *3 ("The true

lodestar amount is [ ] greater than the fee award contained in the settlement agreement.  As a

result, the Court does not disturb the calculation of attorneys' fees . . . .").

        In addition, Plaintiffs' counsel seeks to recover costs of $400 for the court filing fee, ECF

No. 129-4 at 15; $18.40 for parking, *id.* at 5, 10; $1,181.25 for unspecified "deposition" costs, *id.*

at 5; and $528 for printing and copying fees, *id.* at 1, but he has provided no documentation of

these costs, other than listing them in his billing records.  Counsel in FLSA cases may be

awarded reasonable out-of-pocket expenses that are properly substantiated.  *See, e.g.*, *Cortes*,

2016 WL 3455383, at *6 ("Court fees reflected on the Court's docket are sufficiently

substantiated, as are costs for which a claimant provides extrinsic proof, such as invoices or

receipts.  A sworn statement or declaration under penalty of perjury that certain amounts were

expended on particular items is also sufficient.") (citations omitted).  Here, the court filing fee is

reflected on the docket, and thus is sufficiently substantiated.  There is not, however, extrinsic

---

[7] Because the Court finds the requested fees to be reasonable, it will not address whether
the specific rates charged and number of hours expended on this case, as reflected in Plaintiffs'
counsel's billing records, are themselves reasonable.

[8] According to billing records, Plaintiffs' counsel was also assisted by an individual
named Angelica Webber, who spent 10.25 hours on this matter and whose role is not discussed
in the application for *Cheeks* approval.  *See* ECF No. 129-4 at 6, 9.  Accordingly, the Court
excludes this time from its analysis.

proof of any other expense.  To be compensated for these other expenses—which total $1,727.65—counsel must "provide[] extrinsic proof, such as invoices or receipts," or alternatively "[a] sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items."  *Id.*

## CONCLUSION

For the reasons set forth above, the Court finds the proposed settlement to be fair and reasonable; the only term of the Proposed Settlement Agreement as filed at ECF No. 129-1 that cannot yet be approved is the provision in Paragraph 2.c regarding litigation expenses.

Accordingly, Plaintiffs' counsel must provide documentation substantiating the expenses that counsel seeks to have reimbursed through settlement, either in the form of invoices or receipts, or via a sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items.  This supplemental submission must be filed via ECF by June 21, 2023.

Dated: June 14, 2023
       White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge